## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**BRIAN MICHAEL WATERMAN,**

     **Plaintiff,**

     **v.**                              **CASE NO.  24-3220-JWL**

**(FNU) BELL, et al.,**

     **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff and Kansas prisoner Brian Michael Waterman brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Hutchinson Correctional Facility (HCF) in Hutchinson, Kansas and he has been granted leave to proceed in forma pauperis. (Doc. 3.) Plaintiff asserts multiple counts in this matter and names multiple defendants who work at HCF; his allegations are discussed in detail below. On February 13, 2025, the Court issued a memorandum and order (M&O) finding that the proper processing of Count I in this matter could not be achieved without additional information from appropriate officials of the FCSD. (Doc. 15 (citing *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), and *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991)).

The Court therefore ordered Kansas Department of Corrections (KDOC) officials to prepare and file a *Martinez* Report on Count I only, stating that "[u]pon the filing of that Report, the Court will screen Plaintiff's second amended complaint and will issue further orders." (Doc. 15, p. 3.) The *Martinez* Report (Doc. 18), hereinafter referred to as "the Report," has now been filed, and Plaintiff's second amended complaint is before the Court for screening in light of the Report. Although Plaintiff neither sought leave nor was granted permission to respond to the Report, he has filed a response to the Report and exhibits and affidavits in support of his response,

all of which the Court has considered while continuing the screening. (Docs. 22-26.) The Court's screening standards are set forth in the M&O issued on December 30, 2024. (Doc. 5, p. 1-2.)

## I.  The Second Amended Complaint (Doc. 12)

In the operative second amended complaint, Plaintiff names as Defendants HCF Warden Dan Schnurr, Unit Managers (fnu) Moore and (fnu) Parker, Major Bell, and Unit Team members Koob and Fox. (Doc. 12, 1-3.) He sues each in their individual and official capacities. *Id.* Plaintiff asserts seven counts in the second amended complaint. When Plaintiff filed this action, he moved to proceed in forma pauperis. (Doc. 2.) He is subject, however, to the "three-strikes" provision under 28 U.S.C. § 1915(g) because court records establish that he "has, on 3 or more prior occasions, while incarcerated . . . , brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted."[1] Thus, he may proceed in forma pauperis only if he establishes a threat of imminent danger of serious physical injury. *Id.*

Count I of the initial complaint, highly summarized, alleged that Defendants Bell, Parker, Koob, and Fox violated the Eighth Amendment's prohibition of cruel and unusual punishment by turning on exhaust fans that blow cold winter air, dust, and toxic sewer gas into Plaintiff's cell, causing him severe headaches, light-headedness, and sinus problems. (Doc. 1, p. 2, 4, 6.) Further, Plaintiff alleged that the air aggravates his asthma, makes it difficult to breathe, and leaves his cell so cold that he can see his breath in the morning, but the named Defendants refuse to turn off the exhaust fans or give him appropriately warm clothing. *Id.* at 5-6.

---

[1] Prior to filing the instant complaint, at least three prior civil actions filed by Plaintiff qualify as "strikes" under § 1915(g). *See In re Brian Michael Waterman*, Case No. 21-3049, Doc. 010110507615, at 2 (10th Cir. April 14, 2021) (finding that Waterman failed to present even a colorable claim to mandamus relief and dismissal of his petition as frivolous counts as a strike for purposes of the three-strikes provision in 28 U.S.C. § 1915(g)); *Waterman v. Crawford County Jail*, Case No. 18-3035-SAC, Doc. 28 (D. Kan. June 4, 2018) (dismissing for failure to state a claim); *Waterman v. Tippie*, Case No. 18-3295-JTM-GEB, Doc. 22 (D. Kan. July 8, 2019) (dismissing for failure to state a claim).

The Court reviewed the initial complaint and concluded that Count I sufficiently established a threat of imminent danger of serious physical injury, so it granted Plaintiff's request to proceed in forma pauperis. (Doc. 3.) This Count remains the same in the operative second amended complaint, but because that is the controlling complaint at this point, the Court will set forth the facts Plaintiff has alleged in the second amended complaint in support of Count I in more detail, and will describe and address the remaining counts after discussion of Count I and the Report.

As Count I of the second amended complaint, Plaintiff continues to assert a violation of the Eighth Amendment's prohibition of cruel and unusual punishment based on the ventilation system at HCF. (Doc. 12, p. 4.) Plaintiff alleges that fans behind his cell blow in cold air from outside that smells like sewage, dead mice, and urine. *Id.* The system blows dust into Plaintiff's cell, causing him chest pains and multiple asthma attacks. *Id.* at 4, 6. Liberally construing the pro se complaint, Plaintiff further alleges he informed HCF of the conditions at his seg review in December 2023[2]; through multiple Form-9s to Defendants Koob, Moore, and Fox; through a grievance to Defendant Schnurr in early December 2024, and through a grievance to the Secretary of Corrections sent in January 2025. *Id.* at 4,6-7.

During a January 6, 2025 snowstorm, Plaintiff alleges, it was 12 degrees below zero in Hutchinson, Kansas, and the ventilation system blew 30- to 40-degree air into his cell. *Id.* at 7. Plaintiff was given only one blanket and no winter clothing; he was coughing, sneezing, and his feet and hands hurt from the cold. *Id.* Although there is a heater outside of Plaintiff's cell, he alleges that it is useless because the ventilation system blows cold air into his cell. *Id.*

---

[2] The Court will presume that Plaintiff intended to refer to December 2024.

The ventilation system was fixed on January 27, 2025, according to Plaintiff, but it began blowing cold and foul-smelling air again 2 days later. *Id.* Plaintiff states that the smells make him gag and give him headaches. *Id.* Plaintiff asserts that unnamed HCF mental health staff emailed Defendants Koob, Fox, Moore, and Bell "over these issues" in December 2024 and January 2025 and Defendant Bell "was also informed thr[ough] Form 9-seg review like the rest." *Id.* Yet the issues remain unresolved and the ventilation system is clogged with trash, mice feces, and dust, which clog Plaintiff's nose and leave him coughing, "hacking up" dust, and "scared for [his] life" because he has asthma attacks. *Id.*

As Count II, Plaintiff asserts another Eighth Amendment violation, this time based on inadequate access to cleaning supplies. *Id.* at 4. As Count III of the second amended complaint, Plaintiff alleges the violation of the Fourteenth Amendment's guarantees of due process and equal protection, claiming that he is being discriminated against. (Doc. 12, p. 5.) As supporting facts for Count III, Plaintiff alleges that when he transferred to HCF in November 2024, he was placed in administrative segregation restrictive housing, "[t]he same as an inmate who commits [d]isciplinary [i]nfractions." *Id.* Plaintiff asserts that there is no limit on how long he may be housed there, speculating that he "could be housed in restrictive housing for a number of years." *Id.* at 5, 9. Plaintiff states that he is not allowed amenities such as television, food commissary, educational services, and a mirror, despite other KDOC facilities providing these amenities to inmates in administrative segregation. *Id.* at 9-10. Plaintiff also contends that Defendants Schnurr, Bell, Koob, Fox and Moore are not complying with Kansas Department of Corrections' (KDOC) Internal Management Policy & Procedures (IMPPs) on restrictive housing and long-term segregation. *Id.* at 10.

As Count IV, Plaintiff alleges a violation of his First Amendment right to access the courts. *Id.* at 11. As supporting facts for Count IV, Plaintiff alleges that Defendant Schnurr does not conduct weekly interviews with inmates chosen at random to ensure that IMPPs are being followed and inmates are allowed proper access to the law tablet. *Id.* Plaintiff states that he has only been allowed to use the law tablet three times in 88 days and that several of his requests to use the tablet were denied in an attempt to prevent him from conducting research for this civil action. *Id.* Plaintiff further states that the HCF law library will not provide case law unless he submits the exact citation. *Id.*

As Count V, Plaintiff alleges the Eighth Amendment was violated when, in November 2024, he was given a moldy, torn-up mattress. (Doc. 12, p. 12.) Plaintiff's request for a new mattress was denied. *Id.* In December 2024, an HCF nurse told HCF Sergeant Tarr that Plaintiff needed a new mattress; Sergeant Tarr related the message to Defendant Koob on approximately December 20, 2024. *Id.* Plaintiff directly told Defendant Moore that his mattress was moldy and needed to be replaced, and Plaintiff also informed Defendants Bell, Fox, Koob, and Moore during seg review. *Id.* Plaintiff alleges that the moldy mattress made him vomit, gave him headaches, irritated his asthma, made it difficult to breathe, and caused his eyes to burn. *Id.* HCF medical staff gave him an antacid but said that was all they could do. *Id.* Plaintiff filed grievances and Form-9s, which he asserts were ignored. *Id.* On January 25, 2025, Plaintiff's mattress was replaced. *Id.*

As Count VI of the second amended complaint, Plaintiff alleges an Eighth Amendment violation based on delays in receiving clothing and a towel. (Doc. 12, p. 13.) As supporting facts, Plaintiff asserts that on November 4, 2024, he was taken to "seg A3 upstairs" in his boxer shorts because no clean clothes were available. *Id.* The following day, he was taken to seg review where several females were present, clothed only in boxer shorts. *Id.* Plaintiff alleges that it was two

weeks before he received a jumpsuit, a month before he was given a clean pair of boxer shorts, and two months before he received a towel. *Id.* Plaintiff alleges that clothing sat in various parts of HCF for moths without being distributed to inmates. *Id.* Plaintiff and other inmates had to share clothing with inmates in another cellblock because sufficient clothing was not provided. *Id.*

Plaintiff further alleges that he does not get clean clothing as required by IMPPs and that he has to handwash his towel, boxer shorts, and socks. *Id.* Plaintiff notified Defendants Bell, Moore, Koob, and Fox of the issues during seg review in November 2024, December 2024, and January 2025. *Id.* He wrote a grievance to Defendant Schnurr, who replied on November 27, 2024 that appropriate measures were being taken. *Id.* Despite this, Plaintiff alleges that he still does not have sufficient towels, socks, boxer shorts, shirts, and jumpsuits. *Id.*

As Count VII, Plaintiff alleges an Eighth Amendment violation based on the size of his cell. (Doc. 12, p. 14.) Plaintiff also complains about the conditions experienced by inmates in other cell blocks, speculating that he has lived in those cellblocks before and he "could easily be forced back on the yard by the Warden again." *Id.*   As relief, Plaintiff seeks compensatory damages, punitive damages, injunctive relief, and attorney fees. *Id.* at 15.

## II.  The *Martinez* Report (Doc. 18)

The Report and exhibits thereto provide additional details regarding the design of A cellhouse, where Plaintiff lives, and the ventilation system in A cellhouse. (Doc. 18, p. 5-7.) The Report acknowledges that in January 2025, Rolfe Huebner, the Physical Plant Supervisor at HCF, was notified that the air in A2 cellhouse, which includes Plaintiff's cell, was cold. *Id.* at 4-5, 7. When he investigated, he "immediately determined the ceiling fans were not functioning so warm air was not being drawn into the cells." *Id.* at 7. Mr. Huebner identified two inoperable fans and ordered the parts needed to repair them, but as of the date of the Report, at least one remained

nonfunctional. *Id.* at 7-8. Four other fans were fixed immediately, however. *Id.* at 7. Further investigation revealed that sensors in A cellhouse that were meant to measure the air pressure and control the fans were not working and that "the staff monitoring the control panel were not made aware of one aspect of the information on the panel that would have told them the fans were not working correctly." *Id.* at 8.

Although the Report disputes many of the factual allegations Plaintiff makes in Count I of the second amended complaint, this screening phase of this action is not the appropriate time for resolution of those factual disputes. Similarly, the Court need not address the "objections" to the Report that Plaintiff made in his response. The *Martinez* Report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). It "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n.3 (10th Cir. 1983)).

Thus, at this point in the proceedings, the Court does not use the Report to resolve conflicts of fact. "In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report . . . to refute facts specifically pled by a plaintiff, or to resolve factual disputes." *See Swoboda v. Duback*, 922 F.2d 286, 290 (10th Cir. 1993). The Court concludes only that, in light of the information in the Report, Count I states a plausible claim for relief. Before entering an order directing the Clerk to undertake service on behalf of Plaintiff, who appears pro se, however, the Court must first complete screening of the operative complaint.

### III. Discussion

#### A. Count I as brought against Defendant Schnurr

Defendant Schnurr is subject to dismissal from Count I because the allegations in support of Count I, even liberally construed and taken as true, do not allege his personal participation in a constitutional violation. An essential element of a civil rights claim under § 1983 against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). In other words, a viable § 1983 claim must establish that each defendant caused a violation of Plaintiff's constitutional rights. *See Walker v. Johiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)).

The only allegations in Count I of the second amended complaint involving Defendant Schnurr are (1) that he "was made aware" on December 3, 2024 that the exhaust fans were blowing cold, foul air into Plaintiff's cell; (2) that Plaintiff filed a grievance to Defendant Schnurr in December 2023; and (3) that Defendant Schnurr maliciously kept the fans blowing "to punish" Plaintiff and "cause [him] severe health issues." (Doc. 12, p. 4, 6-7.) Plaintiff also asserts in his response to the Report that "[a]s warden, [Defendant Schnurr is] directly responsible for all inmates in his custody," which Plaintiff appears to believe renders Defendant Schnurr sufficiently involved in any violation of an inmate's rights. (Doc. 22, p. 6.)

But the United States Supreme Court has clearly held: "[V]icarious liability is inapplicable to . . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Similarly, the Tenth Circuit has held that a § 1983 "defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional

violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). Thus, Defendant Schnurr's role as HCF Warden is not, in and of itself, sufficient to make him liable under § 1983 for other HCF officials' acts.

Additionally, an allegation that an official denied or failed to respond to a grievance is not enough to show personal participation as required for a plausible claim under § 1983. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Finally, Plaintiff's assertions regarding Defendant Schnurr's motivation to punish Plaintiff are the type of "conclusory allegations without supporting factual averments [that] are insufficient to state a claim upon which relief can be based." *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Thus, Defendant Schnurr is subject to dismissal from Count I. Plaintiff will be granted time in which to show cause, in writing, why Defendant Schnurr should not be dismissed from Count I.

### B.  Joinder of Claims and Parties

The Court has repeatedly explained to Plaintiff that he must follow the Federal Rules of Civil Procedure[3] that govern joining claims and parties in the same action. (*See* Doc. 5, p. 5; Doc. 11, p. 6-8.) The Court has cautioned Plaintiff that improper joinder of claims and parties in this matter could result in the dismissal of misjoined parties or the severance of misjoined claims. (Doc. 11, p. 8.) Because the Court has granted Plaintiff leave to proceed in forma pauperis based on the allegations in Count I, the Court will focus on whether Counts II through VII are properly joined in the same action as Count I.

As a reminder, Federal Rule of Civil Procedure 20(a)(2) governs permissive joinder of defendants and pertinently provides:

---

[3] The Federal Rules of Civil Procedure apply to suits brought by prisoners. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Pro se litigants must "follow the same rules of procedure that govern other litigants."  See *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993)(federal rules apply to all litigants, including prisoners lacking access to counsel).

(2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party." "Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." *Redmon v. Zavaras*, 2009 WL 4059188, *4 (D. Colo. Nov. 20, 2009) (unpublished) (quoting 7 Charles Allen writing, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil 3d §1655); *see also Lynn v. McCurrie*, 2018 WL 3105379, *4 (D. Kan. June 25, 2018) (unpublished) (quoting *Redmon*, 2009 WL 4059188, at *4); *Sperry v. Wildermuth*, 2018 WL 623607, *2 (D. Kan. Jan. 30, 2018) (unpublished) (same).

As explained above, Count I appears at this time to state a plausible claim for relief against Defendants Koob, Fox, Moore, and Bell based on their alleged violation of the Eighth Amendment related to the air quality and temperature in Plaintiff's cell. (*See* Doc. 12, p. 4, 6-7.) Count II alleges an Eighth Amendment violation by Defendants Bell, Fox, Koob, and Parker based on their failure to provide adequate cleaning supplies to Plaintiff. *Id.* at 4, 8.

Count III alleges the violation of the Fourteenth Amendment's guarantees of due process and equal protection without identifying specific Defendants whose acts or omissions violated the constitution. *Id.* at 5, 9-10. Plaintiff asserts that he is being discriminated against by being placed in administrative segregation at HCF, where he is not allowed the same amenities and services as inmates housed in administrative segregation at other KDOC facilities. *Id.* at 5, 9-10.

As Count IV, Plaintiff alleges a violation of his First Amendment right to access the courts based on severely limited access to the law tablet and to legal resources via the HCF law library. *Id.* at 11. As Count V, Plaintiff asserts that the Eighth Amendment was violated when, in November 2024, he was given a moldy, torn-up mattress. *Id.* at 12. As Count VI of the second amended complaint, Plaintiff alleges an Eighth Amendment violation based on delays in receiving clothing and a towel and the ongoing lack of sufficient clothing. *Id.* at 13. As Count VII, Plaintiff alleges an Eighth Amendment violation based on the size of his cell. *Id.* at  14. This highly summarized listing of Plaintiff's claims and allegations notwithstanding, Plaintiff is assured that the Court has carefully considered the second amended complaint and all of the allegations and arguments therein.

While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc*., 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted). "'Misjoinder . . . occurs when there is no common question of law or fact [and] the events that give rise to the plaintiff's claims against defendants do not stem from the same transaction.'" *Nasious v. City and Cnty. Of Denver-Denver Sheriff's Dept.*, 415 Fed. App'x 877, 880 (10th Cir. Feb. 22, 2011) (unpublished) (quoting *DirecTV v. Leto*, 467 F.3d 842, 844 (3d Cir. 2006)). Counts II through VII of this matter do not stem from the same transaction as Count I and there is no common question of law or fact between all seven counts or, indeed, between any of the counts.

Thus, the second amended complaint fails to comply with the joinder rules and cannot go forward as filed. To allow such a "mishmash of a complaint" to proceed would lead to a "morass" and would effectively allow Plaintiff to bring seven lawsuits for the price of one. *See George v.*

*Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "It might also allow him to circumvent the three strikes provision set forth in 28 U.S.C. § 1915(g)." *Lynn*, 2018 WL 3105379, at *3-4 (citation omitted). "Plaintiff may not avoid the filing restriction of § 1915(g) by improperly joining two unrelated actions in one pleading and he is entitled to proceed [in forma pauperis] only for an action that satisfies the imminent danger exception." *Dopp v. Jones*, 2014 WL 5795787 *1 (W.D. Okla. Nov. 6, 2014).

To remedy misjoinder, the Court has two options: dismiss the improperly joined parties or sever the unrelated claims and unrelated parties. *See Nasious*, 415 Fed. App'x at 881. The Court concludes that severance of the improperly joined claims is the appropriate option, since the parties overlap to some extent between the counts alleged in the second amended complaint. As Plaintiff was previously cautioned, if the claims are severed into distinct cases, "he will not automatically be entitled to proceed in forma pauperis in the new case or cases involving the severed claims. Rather, each new action will be reviewed to determine whether Plaintiff is entitled to proceed in forma pauperis on the claim or claims therein." (Doc. 11, p. 8.)

In the interest of efficiency, however, the Court notes that Counts II, III, and IV in the second amended complaint fail to state a plausible claim for relief under § 1983. Thus, rather than severing those claims, the Court is inclined to dismiss them without prejudice . Each is addressed below.

### C.  Failure to State a Claim

#### i.    Count II

As Count II, Plaintiff asserts an Eighth Amendment violation based on inadequate access to cleaning supplies. (Doc. 12, p. 4.) In support of Count II, Plaintiff alleges that between November 4, 2024 and January 30, 2025, he has only cleaned his cell four times and has been

given "an inch of liquid chemicals" and "a broom twice," but never a mop. *Id.* at 8. Plaintiff contends that there is mucus, dried food, and "dark brown human body stains" on the walls of his cell, which is infested with rodents, and that he has had to place clothes and toilet paper around his toilet to stop sewage and water leaking into his cell. *Id.* at 8.

Plaintiff further alleges that on November 11, 2024, he filed a Form 9 to Defendant Fox "over no cleaning supplies," yet he did not receive any cleaning supplies. *Id.* at 4. At seg review on December 6, 2024, Plaintiff requested cleaning supplies and informed Defendants Bell, Fox, Koob, and Parker that no cleaning supplies had been passed out. *Id.* The following day, Plaintiff was moved to another cell and he filed an emergency grievance to Defendant Schnurr, who did not respond. *Id.* at 4, 8. In late December 2024, Defendant Moore "took over" and Plaintiff told Defendant Moore that cleaning supplies were not passed out weekly, as required by the applicable IMPP. *Id.* at 8.

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Prison conditions may be "restrictive and even harsh," *see Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but "[u]nder the Eighth Amendment, [prison] officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001).

> "An inmate raising an Eighth Amendment conditions-of-confinement claim must prove both an objective and subjective component associated with the deficiency.

> The objective component requires conditions sufficiently serious so as to (1) deprive an inmate 'of the minimal civilized measure of life's necessities' or (2) subject an inmate to 'a substantial risk of serious harm.' 'The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety.' To prove deliberate indifference, a prisoner must adduce sufficient facts to show the defendant knew of and disregarded 'an excessive risk to inmate health or safety.' Under this standard, 'the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exist, and he [or she] must also draw the inference.'"

*Brooks v. Colorado Dept. of Corrections*, 12 F.4th 1160, 1173 (10th Cir. 2021) (citations omitted).

The sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation[, so] the 'circumstances, nature, and duration of the challenged conditions must be carefully considered.'" *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2011) (citation omitted). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the condition increases, the length of exposure required to make out a constitutional violation decreases. *Id.* In other words, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations . . . 'may meet the standard despite a shorter duration." *Id.* (citations omitted).

Even liberally construing the second amended complaint and taking all facts therein as true, Plaintiff has failed to allege a plausible claim that the cleaning supplies to which he has access are so scant that it rises to a constitutional violation. Plaintiff does not claim that he was provided *no* cleaning supplies[4], nor does Plaintiff allege facts that support the conclusion that any Defendant named in Count II denied Plaintiff cleaning supplies with the required subjective intent or deliberate indifference to his health or safety. Moreover, Plaintiff's factual allegations are undermined by their contradictory nature.

---

[4] *See Stauch v. Zmuda*, 2024 WL 4634937, *4, 10 (D. Kan. Oct. 31, 2024) (unpublished) (dismissing conditions-of-confinement claim based on allegedly inadequate access to cleaning supplies).

Finally, to the extent that Plaintiff bases his claims on the failure to comply with relevant IMPPs, he has failed to assert a constitutional violation. The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). Accordingly, Count II is subject to dismissal for failure to state a claim. Plaintiff will be granted time in which to show good cause, in writing, why Count II should not be dismissed.

### ii.    Count III

As Count III of the second amended complaint, Plaintiff alleges the violation of the Fourteenth Amendment's guarantees of due process and equal protection, claiming that he is being discriminated against. (Doc. 12, p. 5.) As supporting facts for Count III, Plaintiff alleges that he transferred to HCF on November 4, 2024 and was placed in administrative segregation restrictive housing, "[t]he same as an inmate who commits [d]isciplinary [i]nfractions." *Id.* Plaintiff asserts that there is no limit on how long he may be housed there, speculating that he "could be housed in restrictive housing for a number of years." *Id.* at 5, 9. Plaintiff states that he is not allowed amenities such as television, food commissary, educational services, and a mirror, despite other KDOC facilities—such as El Dorado Correctional Facility (EDCF)—providing these amenities to inmates in administrative segregation. *Id.* at 9-10. Plaintiff also contends that Defendants Schnurr, Bell, Koob, Fox and Moore are not complying with IMPPs on restrictive housing and long-term segregation. *Id.* at 10.

Count III, as articulated in the second amended complaint, continues to suffer from the already identified deficiencies that left it subject to dismissal when Plaintiff raised it in his initial

complaint. (*See* Doc. 5, p. 10-11.) In addition, to the extent that Count III is based on Plaintiff's assertion that he "could be housed in restrictive housing for a number of years" (*see* Doc. 12, p. 9), this Court lacks jurisdiction over claims based on the mere speculation of possible future injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992). Third, although Count III generally alleges circumstances that Plaintiff believes violate the Constitution, it does not connect those circumstances to specific actions by specific Defendants.

"To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 Fed. Appx. 757, 759 (10th Cir. 2009)(quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). For these reasons, Count III is subject to dismissal. Plaintiff will be granted time in which to show good cause, in writing, why Count III should not be dismissed.

### iii.    Count IV

As Count IV, Plaintiff alleges a violation of his First Amendment right to access the courts. (Doc. 12, p. 11.) As supporting facts for Count IV, Plaintiff alleges that Defendant Schnurr does not conduct weekly interviews with inmates chosen at random to ensure that IMPPs are being followed and inmates are allowed proper access to the law tablet. *Id.* Plaintiff states that he has only been allowed to use the law tablet three times in the 88 days prior to preparing the second amended complaint and that several of his requests to use the tablet were denied in an attempt to prevent him from conducting research for this civil action. *Id.* Plaintiff further states that the HCF

law library will not provide case law unless he gives the exact citation, which makes the law library useless to him. *Id.*

Count IV is subject to dismissal first because, as in Count III, Plaintiff has failed to make clear which Defendant denied his requests to use the legal tablet and he has failed to identify specific instances in which the HCF law library refused to send caselaw to Plaintiff without the exact case citation. Additionally, Plaintiff fails to identify a specific legal claim that was hindered by his inability to conduct legal research. His general reference to "this civil action" is insufficient.

Identifying the claim that was frustrated by the alleged denial of access to the courts is essential because "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002). Thus, the denial of access to the courts must have frustrated or hindered a nonfrivolous and arguable claim for relief. Put another way, if the alleged denial of access did *not* frustrate or hinder an arguable, nonfrivolous claim, the denial of access caused no injury. Accordingly, "the underlying cause of action . . . is an element [of a denial of access claim] that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* at 415.

Moreover, as the United States Supreme Court has explained, "[T]he injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354 (1996).

> "[T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint."

*Id.* at 351.

Even liberally construing the second amended complaint, Plaintiff has not done so. Count IV fails to state a plausible claim for relief because it does not identify which Defendant or Defendants denied Plaintiff access to the tablet, nor does it identify the injury to Plaintiff that occurred because of the limited access or because of HCF law library policies on requesting caselaw. As such, Count IV is subject to dismissal but Plaintiff will be granted time in which to show good cause, in writing, why it should not be dismissed.

To be clear, by not including Counts V, VI, and VII in this analysis, the Court does not imply that Counts V, VI, and VII will pass screening if they are severed from this matter. The Court simply notes that Counts V, VI, and VII are not so clearly subject to dismissal that the interest of judicial efficiency does not weigh in favor of their dismissal at this point instead of severing them into additional civil rights actions and then conducting further screening as needed.

## IV. Summary

As set forth above, the Court concludes that Count I of this matter states a plausible claim for relief. The Court further concludes, however, that Defendant Schnurr is subject to dismissal from Count I because Plaintiff has failed to allege facts showing his personal participation in a constitutional violation. The Court also finds that the second amended complaint, as filed, violates the Federal Rules of Civil Procedure that govern joinder of claims and parties. Because Count I of this matter includes the factual allegations that allowed Plaintiff to proceed in forma pauperis in this matter, Count I will be retained under the current case number. The remaining counts and the named Defendants not alleged to be involved in the events underlying Count I, are subject to being severed into individual civil rights actions. Because Counts II, III, and IV fail to state a plausible claim for relief, however, the Court is inclined to dismiss them for failure to state a claim rather than sever them.

Plaintiff will be granted time in which to show cause, in writing: (1) why Defendant Schnurr should not be dismissed from Count I; (2) why Counts II, III, and IV should not be dismissed from this action; and (3) why Counts V, VI, and VII should not be severed into individual civil rights actions. If Plaintiff fails to respond to this order, Counts II, III, and IV will be dismissed from this action; Counts V, VI, and VII will be severed into individual civil rights actions, which will be evaluated to determine whether Plaintiff is entitled to proceed in forma pauperis in each action; and Defendant Schnurr will be dismissed from this action, in which only Count I will remain.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **May 8, 2025,** in which to show cause, in writing, why the Court should not take the actions outlined in this order.

**IT IS SO ORDERED**.

**Dated April 7, 2025, in Kansas City, Kansas.**

<u>**S/ John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**