IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN MICHAEL WATERMAN,

    **Plaintiff,**

    v.                                                             CASE NO. 24-3220-JWL

(FNU) BELL, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff and Kansas prisoner Brian Michael Waterman brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Hutchinson Correctional Facility (HCF) in Hutchinson, Kansas and he has been granted leave to proceed in forma pauperis. (Doc. 3.) Plaintiff asserts multiple counts in this matter and names multiple defendants who work at HCF. On April 7, 2025, the Court issued a memorandum and order (M&O) explaining that Defendant Dan Schnurr is subject to dismissal from Count I of this action, but that otherwise, Count I appears at this time to state a plausible claim for relief against Defendants (fnu) Koob, (fnu) Fox, (fnu) Moore, and (fnu) Bell. (Doc. 27, p. 8, 10.) The M&O further explained that the remaining counts appear to be misjoined claims that the Court is inclined to sever into separate cases, but that Counts II, III, and IV fail to state a plausible claim for relief, so the Court is inclined to dismiss those claims without prejudice rather than sever them. *Id.* at 10-18.

The Court granted Plaintiff time in which to show cause, in writing, why (1) Defendant Schnurr should not be dismissed from Count I of this matter; (2) Counts II, III, and IV should not be dismissed for failure to state a claim on which relief can be granted; and Counts V, VI, and VII

1

should not be severed due to misjoinder with Count I. *Id.* at 18-19. This matter comes now before the Court on Plaintiff's timely response to the M&O. (Doc. 28.)

### Defendant Schnurr

In the M&O, the Court explained:

> The only allegations in Count I of the second amended complaint involving Defendant Schnurr are (1) that he "was made aware" on December 3, 2024 that the exhaust fans were blowing cold, foul air into Plaintiff's cell; (2) that Plaintiff filed a grievance to Defendant Schnurr in December 2023; and (3) that Defendant Schnurr maliciously kept the fans blowing "to punish" Plaintiff and "cause [him] severe health issues." (Doc. 12, p. 4, 6-7.) Plaintiff also asserts in his response to the Report that "[a]s warden, [Defendant Schnurr is] directly responsible for all inmates in his custody," which Plaintiff appears to believe renders Defendant Schnurr sufficiently involved in any violation of an inmate's rights. (Doc. 22, p. 6.)

(Doc. 27, p. 8.)

Vicarious liability is inapplicable to § 1983 actions such as this one and § 1983 plaintiffs must plead facts that, if true, show each defendant's direct personal participation in the acts or inactions upon which the claim is based. *Id.* (citations omitted). Moreover, an allegation that an official denied or failed to respond to a grievance is insufficient to show the required personal participation, and conclusory allegations without supporting facts are similarly insufficient. *Id.* at 9. The Court concluded in the M&O that the second amended complaint failed to allege Defendant Schnurr's direct personal participation in Count I. *Id.*

In his response, Plaintiff first asserts that the operative second amended complaint alleges sufficient personal participation by Defendant Schnurr in the acts underlying Count I. (Doc. 28, p. 1-2.) Specifically, Plaintiff advises that Defendant Schnurr "was placed on notice over the heat" but "took no actions to fix the vents." *Id.* at 1. Plaintiff also states that no one looked into the circumstances on which Count I is based until this Court ordered a *Martinez* Report. *Id.* at 2. Plaintiff further makes assertions regarding Defendant Schnurr's tenure at other Kansas

correctional facilities, as well as previous events at HCF that are not directly related to the claims in this action, and he contends that Defendant Schnurr's "poor outlook on the prison" affects the individuals who work at and for HCF. *Id.* at 1.

The Court has reviewed the factual allegations involving Defendant Schnurr as stated in Count I of the operative second amended complaint (Doc. 12) and, even liberally construing the pro se response to the M&O, maintains its prior conclusion that Plaintiff has not sufficiently alleged Defendant Schnurr's direct personal participation with respect to Count I. Accordingly, Defendant Schnurr will be dismissed from Count I.

## Failure to State a Claim

**Count II**

The M&O set forth the facts alleged in support of Count II in the second amended complaint and concluded that although Plaintiff alleged that he had only very rarely received cleaning supplies to clean his cell, Plaintiff "failed to allege a plausible claim that the cleaning supplies to which he has access are so scant that it rises to a constitutional violation. (Doc. 27, p. 14.) The M&O further noted that to the extent that Plaintiff bases Count II on the defendants' failure to comply with IMPPs that require weekly access to cleaning supplies, the violation of a prison regulation does not state a constitutional violation "unless the prison official's conduct 'failed to conform to the constitutional standard.'" *Id.* at 15 (citation omitted).

In his response, Plaintiff tells the Court that he alleged that sewage leaked into his cell, after which cleaning supplies were denied, in contrast to *Stauch v. Zmuda*, 2024 WL 4634937, *4, 10 (D. Kan. Oct. 31, 2024) (unpublished), which the M&O cited as an example of a case dismissing a conditions-of-confinement claim based on allegedly inadequate access to cleaning supplies. (Doc. 28, p. 2.) He directs the Court's attention to *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978).

3

*Id.* at 3. Plaintiff also asserts that he has only received cleaning supplies four times in 90 days, which he summarily asserts "is unconstitutional," and he states that he only received cleaning supplies once in March 2025. *Id.* at 2-3. Finally, Plaintiff explains that his reference to the failure to comply with IMPPs "is more of a guideline for the courts to take note of the rules an[d] regulations that are to be followed. [They're] failing to conform to that constitutional standard." *Id.* at 3.

After reviewing Plaintiff's response to the M&O, liberally construing it, and taking all facts alleged in the second amended complaint as true, the Court remains unconvinced that Plaintiff has stated a plausible claim for relief. Plaintiff is assured that the Court has read and carefully reviewed *Hutto* and is aware that conditions of confinement, including filthy cells, may in some cases rise to the level of a constitutional violation. Simply put, the Court finds that Plaintiff has not alleged such conditions here. Plaintiff has been given cleaning supplies and does not have an independent constitutional right to get them every seven days, despite the relevant IMPPs so requiring. The second amended complaint largely focuses on how the IMPPs are not being followed.

The Court acknowledges Plaintiff's brief reference in the second amended complaint to sewage in his cell. Specifically, the second amended complaint states: "I had to block around my toilet with cloths and toilet paper to stop sewage and water from leaking into my cell, as I had no way to clean it up." (Doc. 12, p. 8.) This allegation is different than Plaintiff's current allegation in his response to the M&O that sewage leaked into his cell, he asked for cleaning supplies, and his request was denied. Even liberally construing the statement that Plaintiff had to place cloth and toilet paper around his toilet *to stop* sewage and water from leaking into his cell, that statement does not contain the assertions now made in Plaintiff's response, which include that porters are

not allowed in his cell house, inmates flooding their cells on a weekly basis, overflowing trashcans, and more.

The Court conducts the statutorily required screening based on the allegations contained within the operative complaint. Plaintiff may not materially amend the claims and the facts alleged in support thereof in the second amended complaint via his response to the M&O. To allow such implied amendment would effectively render the screening process never-ending, as the Court would constantly need to re-screen claims based on allegations made not in the controlling pleading, but in other filings. Additionally, allowing such implied amendments—as opposed to an express amendment in the form of a completely new pleading—would also raise Rule 8 concerns, as the claim could morph beyond what is stated in the operative complaint.

Thus, the Court maintains its prior conclusion that Count II must be dismissed for failure to state a claim. Because Count II is the only count in which Defendant Parker is named, Defendant Parker will be dismissed from this matter.

**Count III**

The M&O stated:

> As Count III of the second amended complaint, Plaintiff alleges the violation of the Fourteenth Amendment's guarantees of due process and equal protection, claiming that he is being discriminated against. (Doc. 12, p. 5.) As supporting facts for Count III, Plaintiff alleges that he transferred to HCF on November 4, 2024 and was placed in administrative segregation restrictive housing, "[t]he same as an inmate who commits [d]isciplinary [i]nfractions." *Id.* Plaintiff asserts that there is no limit on how long he may be housed there, speculating that he "could be housed in restrictive housing for a number of years." *Id.* at 5, 9. Plaintiff states that he is not allowed amenities such as television, food commissary, educational services, and a mirror, despite other KDOC facilities—such as El Dorado Correctional Facility (EDCF)—providing these amenities to inmates in administrative segregation. *Id.* at 9-10. Plaintiff also contends that Defendants Schnurr, Bell, Koob, Fox and Moore are not complying with IMPPs on restrictive housing and long-term segregation. *Id.* at 10.

> Count III, as articulated in the second amended complaint, continues to suffer from the already identified deficiencies that left it subject to dismissal when Plaintiff raised it in his initial complaint. (*See* Doc. 5, p. 10-11.) In addition, to the extent that Count III is based on Plaintiff's assertion that he "could be housed in restrictive housing for a number of years" (*see* Doc. 12, p. 9), this Court lacks jurisdiction over claims based on the mere speculation of possible future injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992). Third, although Count III generally alleges circumstances that Plaintiff believes violate the Constitution, it does not connect those circumstances to specific actions by specific Defendants.
>
> "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 Fed. Appx. 757, 759 (10th Cir. 2009)(quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). For these reasons, Count III is subject to dismissal. Plaintiff will be granted time in which to show good cause, in writing, why Count III should not be dismissed.

(Doc. 27, p. 15-16.)

In his response, Plaintiff clarifies that he has been housed "under short term (15) segregation" since November 4, 2024. (Doc. 28, p. 4.) He asserts that he identified Defendants Fox, Schnurr, Koob, and Moore as "responsible . . . for housing [him] under short term segregation for more than (5) months now. [*sic*]." *Id.* The Court has reviewed the second amended complaint and finds only one reference to individual defendants in the facts alleged to support Count III: "Warden Schnurr, Major Bell, UT Koob, UT Fox, UTM Moore all observe this IMPP-20-101A and sign long term segregation under it for as long as they like." (Doc. 12, p. 10.) Even liberally construed, this is not sufficient to identify specific actions by particular defendants that violated Plaintiff's constitutional rights. As Plaintiff is aware, the violation of an IMPP does not necessarily amount to a constitutional violation. Thus, Count III will be dismissed for failure to state a claim.

**Count IV**

The M&O explained the Court's conclusion that Count IV failed to state a claim on which relief can be granted. (Doc. 27, p. 16-18.) In his response, Plaintiff does not address Count IV. Doc. 28.) Thus, Count IV will be dismissed for failure to state a claim, for the reasons set out in the M&O.

**Joinder**

In the M&O, the Court concluded that Counts II through VII are not properly joined to Count I. (Doc. 27, p. 9-12.) Because Counts II, III, and IV will be dismissed for the reasons stated above, the Court will address whether Counts V, VI, and VII are properly joined to Count I.

In his response, Plaintiff first asserts that Defendants Schnurr, Bell, Moore, Koob, and Fox "are all named in all counts," so he has complied with Federal Rule of Civil Procedure 20(a)(2), which governs permissive joinder of defendants. (Doc. 28, p. 5.) This assertion is not entirely accurate, as Count VII, for example, even when liberally construed, does not contain allegations of actions or inaction directly attributed to any individual other than Defendant Schnurr.[1] (*See* Doc. 12, p. 14.) And, for the reasons set forth above, Defendant Schnurr must be dismissed from Count I. Thus, Count I and Count VII may not be joined in the same action because they allege different claims against different defendants. Count VII will be severed into a separate case, with Defendant Schnurr named as the sole Defendant.

Count V is based on a moldy mattress that Plaintiff was given to sleep on and that caused him to vomit, have headaches, and experience burning eyes. (Doc. 12, p. 17.) The facts alleged in support of Count V involve Defendants Bell, Fox, Koob, and Moore, who were part of the

---

[1] It is questionable whether Plaintiff has alleged sufficient facts to show Defendant Schnurr's direct personal participation in the Eighth Amendment violation alleged in Count VII. As stated in the M&O, however, Count VII will be subject to the statutorily required screening once it is severed, so any deficiencies may be addressed in that case.

segregation review team to whom Plaintiff complained about the mattress but who failed to replace it. *Id.* Moreover, Plaintiff alleges in support of Count II that Defendant "Schnurr is responsible for ensuring RHU is r[u]n and operated according to [relevant] IMPPs . . . [and] ensuring the policy[] and regulations of the institution are followed." *Id.* As Plaintiff is aware, supervisory liability is insufficient to show the direct personal participation required for a § 1983 claim. Thus, Defendant Schnurr must be dismissed from Count V.

Similarly, Count VI is based on Plaintiff's lack of access to clean clothing and towels. The only factual allegations in Count VI directly attributed to named Defendants in this matter are that Defendants Bell, Moore, Koob, and Fox were part of the segregation review team whom Plaintiff notified of the lack of clean clothing and towels in November 2024, December 2024, and January 2025 and that Defendant Schnurr denied a related grievance and "hasn't taken any measures to get [Plaintiff] clean cloth[e]s" as required by the IMPP. (Doc. 12, p. 13.) The denial of a grievance is insufficient to allege the type of direct personal participation required for a § 1983 claim. Thus, Defendant Schnurr must be dismissed from Count VI.

When Warden Schnurr is dismissed from Counts V and VI, the remaining Defendants against whom Plaintiff asserts Count V and VI are identical to those named in Count I. Thus, the Court concludes that Counts V and VI, once Defendant Schnurr is dismissed, will be properly joined to Count I and may proceed in the same action.

In summary, the Court will dismiss Counts II, III, and IV of this matter for failure to state a claim. Because Defendant Parker is named only in the supporting facts for Count II, the Court will dismiss Defendant Parker from this action. Count VII of this action will be severed into a separate case, with Defendant Schnurr as the sole named defendant, and Plaintiff will be required to pay the filing fee or move to proceed IFP under the new case number. Counts I, V, and VI will

remain under this case number (24-3220), but Defendant Schnurr will be dismissed because Plaintiff has failed to sufficiently allege Defendant Schnurr's direct personal participation in the constitutional violations alleged in Counts I, V, and VI.

The Court concludes that a responsive pleading is required from Defendants Bell, Koob, Fox, and Moore on the counts remaining in this matter: Counts I, V, and VI. The Court will enter a separate e-service order directing service on the remaining four Defendants.

**IT IS THEREFORE ORDERED BY THE COURT** that Counts II, III, and IV of this matter are dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court sever Count VII of the second amended complaint (Doc. 12) into a separate case with Warden Dan Schnurr as the sole Defendant and assess a filing fee for that case.

**IT IS FURTHER ORDERED** that Defendants (fnu) Parker and Dan Schnurr are dismissed from this action (24-3220). A separate e-service order will be entered regarding the remaining Defendants.

**IT IS SO ORDERED**.

**Dated April 29, 2025, in Kansas City, Kansas.**

        S/ John W. Lungstrum
        **JOHN W. LUNGSTRUM**
        **UNITED STATES DISTRICT JUDGE**